UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Kelly L. Ricketson, | Case No. 21-cv-2541 (WMW/ECW) |
| Plaintiff, | |
| v. | **ORDER** |
| Advantage Collection Professionals, LLC, | |
| Defendant. | |

---

This matter is before the Court on the parties' cross motions for attorneys' fees and costs. (Dkts. 22, 32.) For the reasons addressed below, Plaintiff's motion is granted in part and denied in part, and Defendant's motion is granted.

## BACKGROUND

Plaintiff Kelly L. Ricketson is a resident of Minnesota who, sometime in 2020, incurred a financial debt of approximately $100. Defendant Advantage Collection Professionals, LLC (ACP), is a collection agency that operates in Minnesota and repeatedly attempted to collect on Ricketson's outstanding debt in April, May and June 2021. Ricketson commenced this action on November 22, 2021, alleging that ACP's debt-collection attempts violated numerous provisions of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692 *et seq.* Ricketson sought $1,000 in statutory damages and an award of costs and reasonable attorneys' fees.

On December 17, 2021, ACP served on Ricketson's attorney, Michael Sheridan, an offer of judgment pursuant to Federal Rule of Civil Procedure 68. ACP's offer of

judgment offered to resolve this matter for $1,001 plus Ricketson's costs and reasonable attorneys' fees. On December 30, 2021, Ricketson accepted ACP's offer of judgment in writing. Sheridan's time records reflect that, as of that date, Ricketson had incurred $2,220 in attorneys' fees. Without disclosing this information to ACP's counsel, Sheridan asked ACP's counsel to "[p]lease advise what your client would consider to be an agreeable amount of attorney's fees and costs."

On January 3, 2022, ACP's counsel emailed Sheridan to request "at least an outline of your time and expenses claimed in this matter." Sheridan declined to provide this information, responding that he would "provide [ACP's counsel] with [his] time records pursuant to a request for production of documents under [Federal Rule of Civil Procedure] 34" and, absent such a request, ACP could "present [Sheridan] with an offer for attorney fees without [his] time records." ACP's counsel subsequently attempted to request production of Sheridan's billing records by email pursuant to Federal Rule of Civil Procedure 34. In response, Sheridan wrote: "Please serve your discovery request pursuant to FRCP 5. I do not recall consenting to service via email in writing."

On January 25, 2022, Sheridan emailed ACP's counsel that he was "willing to settle the attorney fees and costs portion of the judgment for $10,000." As of that date, Sheridan had not produced any billing records to ACP's counsel. The billing records Sheridan subsequently submitted to the Court demonstrate that, as of that date, Sheridan had actually billed his client $2,880 in fees and $469.50 in costs.

2

On February 3, 2022, having not received any information from Sheridan about the amount of attorneys' fees and costs actually incurred by Ricketson, ACP offered to pay Ricketson $1,447.50 in reasonable fees and $485 in reasonable costs. Sheridan responded: "I am authorized to settle this case for $9,001." The next day, the magistrate judge held an initial pretrial conference. There is no transcript of that hearing. But the parties agree that, during that hearing, Sheridan conceded to the magistrate judge that his refusal to engage in informal discovery as to his billing records may have been "petty." In addition, Sheridan concedes that he told the magistrate judge that he was not requiring ACP to pay more attorneys' fees than what he had billed to his client. Sheridan's statement to the magistrate judge contradicts the facts reflected in Sheridan's billing records and Sheridan's correspondence with ACP's counsel.

Thereafter, Sheridan persisted in refusing to provide his billing records, asserting to ACP's counsel that he is "not required to help you take shortcuts or reduce your time commitment or client's costs" and that he has "no legal or ethical obligation to help you reduce your client's legal costs or make the resolution of this case any more efficient than the process required under the law." Sheridan also continued to represent that his $9,001 "settlement floor" reflected the amount of fees he had "billed in this case to date." Contrary to this assertion, Sheridan's billing records reflect that he had billed $4,020 in attorneys' fees and $469.50 in costs as of February 4, 2022.

Ricketson now moves for an award of $7,860 in attorneys' fees and $469.50 in costs. This amount comprises the $2,220 in attorneys' fees Sheridan had billed as of the

3

date his client accepted ACP's offer of judgment, plus $5,640 in attorneys' fees Sheridan billed for work performed thereafter, including the preparation and filing of Ricketson's pending motion for attorneys' fees and costs. ACP opposes Ricketson's motion. ACP does not dispute that Ricketson is the prevailing party and, thus, entitled to recover attorneys' fees and costs. However, in light of Sheridan's conduct in this case, ACP contends that "the only appropriate and justified award would be costs of $469.50 and a nominal attorney fee of $1." In addition, ACP cross-moves for an award of the reasonable attorneys' fees that ACP incurred after Ricketson's acceptance of ACP's offer of judgment pursuant to 28 U.S.C. § 1927, arguing that Sheridan's conduct multiplied the proceedings in this case unreasonably and vexatiously.

## ANALYSIS

### I.     Ricketson's Motion for Attorneys' Fees and Costs (15 U.S.C. § 1692k)

Ricketson moves for an award of reasonable attorneys' fees and costs based on her status as the prevailing party in this case.

A plaintiff in "any successful action" against a debt collector to enforce the requirements of the FDCPA may recover "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). "[T]he FDCPA's fee-shifting provision is mandatory." *Alberts v. Nash Finch Co.*, 245 F.R.D. 399, 410 (D. Minn. 2007) (collecting cases). A plaintiff who accepts a Rule 68 offer of judgment may recover costs and attorneys' fees under the FDCPA's fee-shifting provision, including attorneys' fees the plaintiff "accrued in deciding whether to accept a

Rule 68 offer," as long as those fees "are reasonable." *Zortman v. J.C. Christensen & Assocs., Inc.*, 870 F. Supp. 2d 694, 697 (D. Minn. 2012).

A district court has substantial discretion when determining the reasonableness of attorneys' fees. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Jarrett v. ERC Props., Inc.*, 211 F.3d 1078, 1084–85 (8th Cir. 2000). Courts employ the lodestar method when determining the reasonable amount of attorneys' fees. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563–64 (1986). Under this method, the lodestar amount is presumed to be the reasonable fee to which counsel is entitled. *Id.* at 564; *McDonald v. Armontrout*, 860 F.2d 1456, 1458 (8th Cir. 1988). To calculate the lodestar amount, a district court multiplies the number of hours reasonably expended by a reasonable hourly rate, *Hensley*, 461 U.S. at 433, which must be "in line with [the] prevailing [rate] in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The party seeking an attorneys' fees award has the burden to establish entitlement to an award with documentation that addresses the nature of the work, the appropriateness of the hourly rates and the hours expended. *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) (citing *Hensley*, 461 U.S. at 437). The Court addresses, in turn, the reasonableness of Ricketson's claimed hourly rates, number of hours expended and costs.

### A. Hourly Rates

Ricketson seeks attorneys' fees for work performed by one attorney, Sheridan, at an hourly rate of $300.

Although ACP does not specifically challenge the reasonableness of the hourly rate charged by Ricketson's counsel, the Court nonetheless must confirm that the claimed hourly rate is reasonable. A district court may rely on its experience and knowledge of prevailing market rates to determine whether the claimed hourly rate is reasonable. *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005). A reasonable fee is "one that is adequate to attract competent counsel, but . . . [that does] not produce windfalls to attorneys." *McDonald*, 860 F.2d at 1458 (alteration in original) (quoting *Blum*, 465 U.S. at 897). The "skill, experience, and reputation of counsel are key factors bearing on a rate's reasonableness." *Id.* at 1459. Here, although Ricketson does not provide any information about her attorney's experience, public records reflect that Sheridan has practiced law for nearly 15 years and has experience in bankruptcy proceedings and civil litigation. Judges in this District have approved hourly rates similar to Sheridan's $300 rate in other FDCPA cases. *See, e.g.*, *Nathanson v. Diversified Adjustment Serv., Inc.*, No. 18-CV-3102 (PJS/ECW), 2019 WL 4387960, at *4 (D. Minn. Sept. 13, 2019) (collecting cases approving hourly rates ranging from $220 to $400). In addition, Sheridan reduced his rate from $300 to $180 for certain administrative tasks. The Court has considered these facts along with the Court's experience and knowledge of prevailing market rates, which are consistent with the hourly rate claimed by Sheridan.

For these reasons, the Court concludes that Sheridan's claimed hourly rate is reasonable and consistent with the rates in this community for similar services by lawyers of comparable experience.

### B. Hours Expended

Ricketson seeks $7,860 in attorneys' fees for 25.5 hours of work performed in this case. This comprises 7.6 hours of work performed through the date that Ricketson accepted ACP's Rule 68 offer of judgment and an additional 17.9 hours of work performed thereafter.

When conducting a lodestar analysis, a district court should exclude "hours that were not reasonably expended." *Hensley*, 461 U.S. at 434 (internal quotation marks omitted). As such, "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* In addition, because incomplete or imprecise billing records may prevent a district court from meaningfully reviewing a request for excessive, redundant or otherwise unnecessary hours, "[i]nadequate documentation may warrant a reduced fee." *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991).

### 1. Work Performed Through Acceptance of Rule 68 Offer

Sheridan's billing records reflect that he performed 7.6 hours of work, for a total of $2,220 in fees, through the date that Ricketson accepted ACP's Rule 68 offer of judgment. Sheridan's work during this period of time included conferring with his client and reviewing the case file; drafting, revising, filing and serving the complaint and

exhibits; reviewing ACP's Rule 68 offer of judgment, researching related issues, and conferring with his client as to this issue; and responding to ACP's Rule 68 offer of judgment. ACP argues that Sheridan billed for several unnecessary and administrative tasks during this time period.

ACP first contends that Sheridan excessively performed 2.9 hours of work (for a total of $810) preparing the complaint; half an hour of work (for an adjusted total of $90) providing the summons and complaint to a process server, drafting the civil cover sheet, and filing the complaint and exhibits; and 3.8 hours of work (for a total of $1,140) reviewing ACP's Rule 68 offer of judgment, conferring with his client about the offer, conducting related research, drafting the written acceptance of the offer, and reviewing a court order. A district court "need not, and indeed should not," scrutinize each billing entry of an attorney who is seeking a fees award, because the "essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Here, nothing in the record suggests that the 2.9 hours of work Sheridan performed when preparing the complaint was unreasonably excessive. Although Ricketson's complaint is only six pages long, Sheridan's preparation of the complaint included conferring with his client, reviewing the case file, and drafting the complaint—which includes a verification page and several exhibits. In addition, the half an hour Sheridan billed for the service and filing of the complaint and related documents is not excessive in length, and Sheridan significantly reduced the billing rate for these tasks. Finally, a plaintiff may recover reasonable attorneys' fees "accrued in deciding

whether to accept a Rule 68 offer." *Zortman*, 870 F. Supp. 2d at 697. The 3.8 hours Sheridan spent reviewing ACP's Rule 68 offer, conferring with opposing counsel and his client about that offer, researching relevant legal issues and rules and drafting a written acceptance of the offer were reasonable.

For these reasons, the 7.6 hours of work Sheridan performed through the date that Ricketson accepted ACP's Rule 68 offer of judgment, for a total of $2,220 in fees, was reasonable.

### 2. Work Performed After Acceptance of Rule 68 Offer

Sheridan's billing records reflect that he performed 17.9 hours of work, for a total of $5,640 in fees, after Ricketson accepted ACP's Rule 68 offer of judgment.

Judges in this District and elsewhere have recognized that, "under the FDCPA, a plaintiff is entitled to attorney's fees accumulated after a Rule 68 offer including those associated with preparing a fee petition and resulting litigation." *Id.* (collecting cases). But "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary*." *Hensley*, 461 U.S. at 434. Assessing the reasonableness of a requested fee requires a court to consider, among other things, "the efficiency with which the plaintiff's attorneys conducted" the litigation. *Jenkins by Jenkins v. Missouri*, 127 F.3d 709, 718 (8th Cir. 1997). A court also may consider whether the attorney's activities were "defensive, seeking to preserve relief obtained earlier, or offensive, seeking to augment what had already been approved." *Id.* at 719 (recognizing that fees incurred post-judgment may be denied when, *after* prevailing, the prevailing party seeks to

"expand [a] victory"). A district court must determine whether the requested fees under the FDCPA are "reasonable in light of all the particular circumstances of the case before the [c]ourt, including the amount of time that was reasonably necessary to obtain the relief provided for by Congress for consumers." *Phenow v. Johnson, Rodenberg & Lauinger, PLLP*, 766 F. Supp. 2d 955, 959 (D. Minn. 2011). A district court may decline to award attorneys' fees for time spent on a fee petition when "counsel's own unreasonable conduct created the need to file the fee petition." *Olson v. Messerli & Kramer, P.A.*, 07-CV-0439 (PJS/RLE), 2008 WL 1699605, at *3 (D. Minn. Apr. 9, 2008).

Under the FDCPA, the statutory maximum amount that Ricketson could recover—and the only amount of damages she sought in her complaint—was $1,000. *See* 15 U.S.C. § 1692k(a)(2)(A) (providing that a plaintiff may recover statutory damages "not exceeding $1,000"). ACP's Rule 68 offer of judgment in the amount of $1,001 provided Ricketson with *more* than she could have recovered in statutory damages under the FDCPA, plus Ricketson's reasonable attorneys' fees and costs. When Ricketson accepted this offer on December 30, 2021, having obtained more than the full relief she sought, she had incurred $2,220 in attorneys' fees. And there is nothing in the record to suggest that Sheridan performed other unbilled work prior to December 30, 2021, that was necessary to obtain Ricketson's full recovery of statutory damages. As such, the highest amount of attorneys' fees that Ricketson could have reasonably recovered from ACP as of that date was $2,220. *See Hensley*, 461 U.S. at 434 (observing that counsel cannot recover fees for unnecessary work or hours that could not be billed to the client);

*Phenow*, 766 F. Supp. 2d at 959 (observing that a plaintiff may recover attorneys' fees for "time that was reasonably necessary to obtain the relief" available to the plaintiff under the FDCPA). Sheridan could have negotiated with ACP in good faith to recover the $2,220 in reasonable attorneys' fees Ricketson had incurred and, if those negotiations failed, Sheridan could have petitioned the Court to recover the $2,220 in reasonable attorneys' fees plus any additional fees reasonably necessary to obtain such relief from the Court. *Zortman*, 870 F. Supp. 2d at 697 (observing that an FDCPA plaintiff may recover reasonable attorneys' fees associated with preparing a fee petition and resulting litigation). But Sheridan did not do so.

Instead, the record demonstrates that Sheridan repeatedly refused to engage in a good-faith effort to recover $2,220 in reasonable attorneys' fees. For several weeks he did not provide ACP with a proposed attorneys' fee amount or any information that would permit ACP's attorneys to meaningfully confer as to a reasonable amount. Even though it is a plaintiff's burden to establish the reasonableness of any attorneys' fees sought, Sheridan repeatedly and obstinately refused ACP's reasonable requests for relevant information. This conduct alone could warrant a denial of the attorneys' fees Ricketson incurred thereafter. *See, e.g.*, *Olson*, 2008 WL 1699605, at *3 (reducing attorneys' fees award because "a substantial reason for the parties' failure to settle the amount of the fees was counsel's refusal to provide any documentation in support of their claimed fees during the parties' negotiations").

Thereafter, without providing any evidentiary support, Sheridan requested $10,000 in attorneys' fees from ACP—more than *four times* the amount of attorneys' fees that had been actually billed to Sheridan's client and necessary to his client's success. When ACP subsequently counteroffered to pay Ricketson $1,447.50 in reasonable fees and $485 in reasonable costs, Sheridan responded: "I am authorized to settle this case for $9,001." Meanwhile, Sheridan billed his client an additional $5,640 for 17.9 hours of work performed *after* he had obtained more than the full statutory relief to which his client was entitled. The record overwhelmingly demonstrates that, after Ricketson accepted ACP's Rule 68 offer of judgment, Sheridan engaged in conduct designed to prolong this litigation and augment Ricketson's recovery. And the additional *thousands of dollars* in attorneys' fees Sheridan billed to his client and sought to recover from ACP were purely a windfall. *McDonald*, 860 F.2d at 1458 (observing that a reasonable fee should not produce a windfall to counsel). Such fees are unreasonable and unrecoverable.

On this record, Ricketson has not demonstrated that the hours Sheridan expended after Ricketson accepted ACP's Rule 68 offer of judgment were reasonable. Accordingly, Ricketson's recovery of reasonable attorneys' fees is limited to the 7.6 hours of work Sheridan performed through the date that Ricketson accepted ACP's Rule 68 offer of judgment, for a total of $2,220.

### C. Costs

Ricketson also seeks $469.50 in costs. This amount comprises $402 in filing fees and $67.50 in service-of-process fees. ACP does not dispute the reasonableness of this

12

amount, which the record supports. Accordingly, the Court awards Ricketson $469.50 in costs.

## II. ACP's Motion for Attorneys' Fees and Costs (28 U.S.C. § 1927)

ACP cross-moves for an award of the reasonable attorneys' fees and costs that it incurred after Ricketson's acceptance of ACP's offer of judgment, pursuant to 28 U.S.C. § 1927, arguing that Sheridan's conduct multiplied the proceedings in this case unreasonably and vexatiously.

A district court may require an attorney "to *satisfy personally* the excess costs, expenses, and attorneys' fees reasonably incurred" as a result of that attorney "multipl[ying] the proceedings . . . unreasonably and vexatiously." 28 U.S.C. § 1927 (emphasis added). Sanctions under Section 1927 are appropriate when "attorney conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *Lee v. First Lenders Ins. Servs., Inc.*, 236 F.3d 443, 445 (8th Cir. 2001) (internal quotation marks omitted). The primary purpose of sanctions under Section 1927 is to deter future intentional misconduct by attorneys. *See United States v. Davis*, 52 F.3d 781, 782 (8th Cir. 1995) (recognizing that Section 1927 imposes liability for vexatious litigation to deter such conduct); *Welk v. GMAC Mortg., LLC*, 850 F. Supp. 2d 976, 1006 (D. Minn. 2012) ("Section 1927 does not distinguish between winners and losers and is concerned only with limiting the abuse of court processes." (internal quotation marks omitted)). "Because section 1927 is penal in nature, it should be strictly construed so that it does not dampen the legitimate zeal of an attorney in

13

representing [the attorney's] client." *Lee v. L.B. Sales, Inc.*, 177 F.3d 714, 718 (8th Cir. 1999) (internal quotation marks omitted). A district court has substantial discretion when ordering sanctions under Section 1927. *Lee*, 236 F.3d at 445.

As addressed in Part I.B.2. of this Order, when Ricketson accepted ACP's Rule 68 offer of judgment, Ricketson could not have reasonably recovered more than $2,220 from ACP. There is no evidence that Sheridan billed his client for more than this amount, and a party cannot recover a greater amount of attorneys' fees from her adversary than the amount properly billed to her. *See Hensley*, 461 U.S. at 434. But Sheridan obstinately refused to engage in a good-faith effort to recover an appropriate amount. For several weeks he did not provide ACP with any proposed attorneys' fee amount or information that would permit ACP's attorneys to confer meaningfully as to what a reasonable amount might be.

According to Sheridan, it was reasonable for him to insist that any request for his billing records must be made pursuant to a formal discovery request. In his email correspondence with ACP's attorneys, Sheridan argumentatively insisted that ACP is "not entitled to [Sheridan's] cooperation beyond the rules," that Sheridan is "not required to help [opposing counsel] take shortcuts or reduce [opposing counsel's] time commitment or client's costs," and that Sheridan has "no legal or ethical obligation to help [ACP] reduce [its] client's legal costs or make the resolution of this case any more efficient than the process required under the law." Sheridan is mistaken.

The party seeking an award of attorneys' fees has the burden to demonstrate that any fees sought are reasonable. *Id.* at 433–34. And the Federal Rules of Civil Procedures are to be "construed, administered, and employed by . . . the parties to secure the just, *speedy*, and *inexpensive* determination of every action and proceeding." Fed. R. Civ. P. 1 (emphasis added). Although Sheridan may have been *technically* within his rights to demand strict conformity with procedural rules, "the question of what a lawyer has a *right* to do is not the same as the question of what a lawyer *should* do," and judges in this District "expect[ ] that members of its bar will treat each other civilly and make every effort to resolve disputes before inflicting costs on their own clients, their opponents, and the Court." *Bendickson v. Messerli & Kramer, P.A.*, No. 16-CV-0313 (PJS/BRT), 2016 WL 4408822, at *6 (D. Minn. Aug. 16, 2016); *accord Olson*, 2008 WL 1699605, at *3. A lawyer also has an ethical obligation to "make reasonable efforts to expedite litigation consistent with the interest of the client." Minn. R. Prof. Conduct 3.2. And an attorney "has a duty to use legal procedure for the fullest benefit of the client's cause, but also a duty not to abuse legal procedure." Minn. R. Prof. Conduct 3.1, cmt. 1.

Contrary to the foregoing principles, Sheridan used the Federal Rules of Civil Procedure as a tool for no apparent purpose other than to obstruct and harass opposing counsel and prolong the resolution of the parties' dispute. Sheridan fails to present a good-faith basis to justify his repeated refusals to respond to ACP's reasonable requests for relevant information. Indeed, he conceded to the magistrate judge that his refusal to engage in informal discovery was "petty." Sheridan abused legal procedure, and his

15

attempts to shield his admittedly "petty" conduct behind the letter of the rules contravenes both the spirit of the rules and the Court's expectations of professionalism.

The conduct described above, without more, might not demonstrate the degree of vexatious behavior required for an award of attorneys' fees under 28 U.S.C. § 1927. But Sheridan's improper conduct persisted and worsened. After several weeks of obstructing ACP's ability to reasonably confer about reasonable attorneys' fees, Sheridan requested $10,000 in attorneys' fees—more than *four times* the amount of attorneys' fees that had been actually billed to his client and necessary to his client's success. Sheridan provided ACP with no evidence to support that request, and he has provided no evidence to this Court to justify such a request. When ACP subsequently counteroffered to pay Ricketson $1,447.50 in reasonable fees and $485 in reasonable costs, Sheridan responded: "I am authorized to settle this case for $9,001."[1] This evidence demonstrates that, rather than negotiating the attorneys' fees issue in good faith, Sheridan repeatedly and improperly sought a significant windfall to which he was not legally entitled to obtain. *See Hensley*, 461 U.S. at 434; *McDonald*, 860 F.2d at 1458. And in the time between Ricketson's acceptance of ACP's Rule 68 offer of judgment and Sheridan's baseless request for $9,001, Sheridan billed his own client an additional $960. Sheridan's conduct delayed resolution of this case and forced both parties to expend unnecessary time and resources.

One day after Sheridan's offer to settle the attorneys' fees issue for $9,001, the magistrate judge held an initial pretrial conference. At that hearing, Sheridan told the

---

[1] This response is nonsensical because the reasonableness of attorneys' fees is not subject to a client's "authorization."

magistrate judge that he was not requiring ACP to pay more attorneys' fees than what he had billed to his client. Sheridan denies that this statement to the magistrate judge was false. He argues that there is a distinction between *requiring* ACP to pay more than what had been billed—which Sheridan had not done—and making *settlement offers* for more than what had been billed—which Sheridan had done. This semantic distinction is immaterial. The record reflects that Sheridan repeatedly sought three to four times the amount of attorneys' fees that the law permitted him to recover, while simultaneously obstructing ACP's access to information exclusively in Sheridan's control that demonstrated the extent of his unreasonable overreach. At best, Sheridan's representations to the magistrate judge were highly misleading.

    Sheridan argues that offering to settle for an attorneys' fees amount that is "above the goal amount" is not an improper or unethical negotiation tactic. But he identifies no legal authority that supports this argument. A lawyer is ethically prohibited from advancing an argument in a legal proceeding "unless there is a basis in law and fact for doing so that is not frivolous." Minn. R. Prof. Conduct 3.1. Sheridan had no basis in law or fact to seek $10,000 in attorneys' fees from ACP, an amount that would have given Sheridan a windfall of more than $7,000. The highest permissible "goal amount" from which Sheridan could have properly initiated settlement negotiations was the amount he had actually billed his client, yet Sheridan knowingly and repeatedly attempted to recover a windfall of three to four times that amount. In doing so, Sheridan prolonged this

litigation by several months and forced his client, ACP and the Court to expend unnecessary time and resources.

In summary, the record overwhelmingly demonstrates that, after Ricketson accepted ACP's Rule 68 offer of judgment for more than the full statutory relief to which Ricketson was entitled, Sheridan engaged in conduct designed to prolong this litigation, improperly augment Ricketson's recovery and obtain a windfall for himself. Sheridan unreasonably obstructed the negotiations for attorneys' fees, knowingly attempted to recover more money than he was entitled to seek under the law, deceived opposing counsel and the magistrate judge, unnecessarily prolonged this case by several months and forced the Court and the parties to expend unnecessary time and resources. On this record, the Court finds that Sheridan's conduct "manifests either intentional or reckless disregard of [his] duties to the court," *Lee*, 236 F.3d at 445, that Sheridan "multiplie[d] the proceedings in [this] case unreasonably and vexatiously," 28 U.S.C. § 1927, and that awarding ACP its reasonable attorneys' fees will deter future intentional misconduct by Sheridan and other attorneys, *see Davis*, 52 F.3d at 782; *Welk*, 850 F. Supp. 2d at 1006.

Accordingly, ACP's motion for attorneys' fees and costs under 28 U.S.C. § 1927 is granted.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1.  Plaintiff Kelly L. Ricketson's motion for attorneys' fees and costs, (Dkt. 22), is **GRANTED IN PART AND DENIED IN PART** as addressed herein.

2.  Ricketson is awarded attorneys' fees and costs, pursuant to 15 U.S.C. § 1692k(a)(3), in the following amounts:

    a.  $2,220 in reasonable attorneys' fees; and

    b.  $469.50 in reasonable costs.

3.  Defendant Advantage Collection Professionals, LLC's (ACP) motion for attorneys' fees and costs, (Dkt. 32), is **GRANTED** in an amount to be determined as follows:

    a.  ACP shall file a supplemental motion, memorandum of law, and supporting documentation in support of its request for reasonable attorneys' fees and costs, consistent with this Order, no later than 30 days after the date of this Order.

    b.  Ricketson shall file a response no later than 21 days after ACP files its supplemental motion.

    c.  ACP may file a reply no later than 14 days after Ricketson files her response, at which time the Court will take the matter under advisement on the written submissions.

    LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 26, 2022                            s/Wilhelmina M. Wright
                                                  Wilhelmina M. Wright
                                                  United States District Judge